## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| CAMILA DAVALOS, TARA LEIGH PATRICK a/k/a CARMEN ELECTRA, JACLYN SWEDBERG, JESSICA 'JESSA' HINTON, LUCY PINDER, MARIANA DAVALOS, ROSIE WICKS a/k/a ROSIE JONES, SANDRA VALENCIA, and HOLLY PEERS,<br><br>*Plaintiffs*,<br><br>- against -<br><br>GGC-BALTIMORE, LLC d/b/a THE GENTLEMEN'S GOLD CLUB; JEAN MALKIEWICZ; and DIANE KOZEL,<br><br>*Defendants*. | Case No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiffs, CAMILA DAVALOS, TARA LEIGH PATRICK a/k/a CARMEN ELECTRA, JACLYN SWEDBERG, JESSICA 'JESSA' HINTON, LUCY PINDER, MARIANA DAVALOS, ROSIE WICKS A/K/A ROSIE JONES, SANDRA VALENCIA, and HOLLY PEERS (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against Defendants GGC-BALTIMORE, LLC; JEAN MALKIEWICZ; and DIANE KOZEL (collectively, "Defendants") respectfully allege as follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their strip club, The Gentlemen's Gold Club located in Baltimore, Maryland ("Gold Club" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of

- 1 -

Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of each Plaintiff's common law right of publicity;  d) violation of the Maryland's Consumer Protection Act, West's Ann. Md. Code, Commercial Law § 13-301; e) defamation; and f) various common law torts, including conversion.

3.     In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 15 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.     As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.     According to publicly available records, defendant GGC-BALTIMORE, LLC is a limited liability company formed under the laws of the state of Maryland, with its principal place of business located at 5801 Pulaski Highway, Baltimore, Maryland 21205.  GGC-BALTIMORE, LLC operates THE GENTLEMEN'S GOLD CLUB, which is located at 5801 Pulaski Highway, Baltimore, Maryland, 21205.

7.     Venue is proper in the United States District Court for the District of Maryland

because Baltimore, Maryland is Defendants' principal place of business.

8.     A significant portion of the alleged causes of action arose and accrued in Baltimore, Maryland and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Baltimore, Maryland.

## PARTIES

*Plaintiffs*

9.     Plaintiff Camila Davalos ("C.Davalos") is a well-known professional model, and a resident of Miami-Dade County, Florida.

10.     Plaintiff Tara Leigh Patrick a/k/a Carmen Electra ("Electra") is a well-known professional model, and a resident of Los Angeles County, California.

11.     Plaintiff Jaclyn Swedberg ("Swedberg") is a well-known professional model, and a resident of San Bernardino County, California.

12.     Plaintiff Jessica 'Jessa' Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of Winchester, England.

14.     Plaintiff Mariana Davalos ("M.Davalos") is a well-known professional model, and a resident of Los Angeles County, California.

15.     Plaintiff Rosie Wicks a/k/a Rosie Jones ("Wicks") is a well-known professional model, and a resident of Richmond, England.

16.     Plaintiff Sandra Valencia ("Valencia") is a well-known professional model, and a resident of Medellin, Colombia.

17.     Plaintiff Holly Peers ("Peers") is a well-known professional model, and a resident

of Manchester, England.

***Defendants***

18.     According to publicly available records, defendant GGC-BALTIMORE, LLC is formed under the laws of the state of Maryland.  During times relevant to this action, GGC-BALTIMORE, LLC operated The Gentlemen's Gold Club in Baltimore, Maryland.

19.     According to publicly available records, and upon information and belief, defendant JEAN MALKIEWICZ in his or her capacity as principal, owner and/or CEO of GGC-BALTIMORE, LLC, maintained operational control over THE GENTLEMEN'S GOLD CLUB, including all advertising relating thereto.

20.     According to publicly available records, and upon information and belief, defendant DIANE KOZEL in his or her capacity as principal, owner and/or CEO of GGC-BALTIMORE, LLC, maintained operational control over THE GENTLEMEN'S GOLD CLUB, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

21.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

22.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

23.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by

one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Gold Club.

24.     In the case of every Plaintiff, such appearance was false.

25.     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

26.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

27.     C.Davalos is a model whom by the time was 18, her career was already established in Colombia as one of the most famous and successful models there. At age 22, C.Davalos became the face of the world famous *Besame* lingerie line and was in high demand in the United States. Since then, C.Davalos has earned a reputation as a Latin Super Model, appearing in hundreds of magazine editorials, catalogues, runway shows and covers. Some of her clients include *Maxim Magazine, Imagen Magazine, Besame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans, and Satori.*

28.     That we know of, C.Davalos is depicted in the photos in **Exhibit "A"** to promote Gold Club on its X (formerly known as Twitter) page. These Images were intentionally altered to make it appear that C.Davalos was either a stripper working at Gold Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

29.     C.Davalos has never been employed at Gold Club, has never been hired to endorse Gold Club, has never been otherwise associated or affiliated with Gold Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

30.     Electra is an actress, recording artist, author, and entrepreneur. With an impressive body of work that encompasses dance, television, film, comedy, music, and theatre. Electra is one of Hollywood's most versatile personalities. She attended Cincinnati's School for Creative and Performing Arts. After graduating high school in 1991, Electra moved to Los Angeles and caught the eye of Prince, who produced her self-titled album on his Paisley Park record label. Electra ventured into acting with regular roles on *Baywatch* and MTV's *Singled Out.* She has since made the move to the big screen with starring roles in blockbuster hits including *Scary Movie*, *Dirty Love*, *Cheaper by the Dozen 2*, and *Meet the Spartans*. Electra attained the role as the face of MAX Factor following in the famous footsteps of Marilyn Monroe and Jaclyn Smith. In 2006, Electra became a published author with the release of her book, "How to be Sexy." She also formed the dance troupe, The Bombshells, who perform nationwide, and released the fitness DVD series, *Carmen Electra's Aerobic Striptease*. In 2009, Electra appeared on stage in MGM Grand Vegas' Crazy Horse Burlesque Show to sold-out audiences during the summer and fall of the year. In 2010, she starred in the film, *Oy Vey, My Son is Gay* and *2-Headed Shark Attack*, alongside Charlie O'Connell, served as a guest judge on *Britain's Got Talent*, and made reoccurring guest appearances on CW's hit show, *90210*. In November of 2012, Electra released her return-to-music single, "I Like it Loud," featuring Grammy-nominated producer Bill Hamel. The single, which delves into Electra's fun and playful side, marks 20 years since she first burst onto the Hollywood circuit. "I Like It Loud" hit the #25 spot on Billboard's Dance Club Play Chart, the sultry

songstress was on fire, turning up the heat for audiences, including *The Wendy Williams Show*, Cyndi Lauper's *Home For The Holidays* charity event, the notorious White Party in Palm Springs, and the Life Ball in Vienna. In June of 2014, Electra released 'Werq', which was followed by the release of the music video. She also released her hottest single yet, 'Around The World'. As a "Thank You" to her global supporters. In November 2015, Electra performed a few of her hits in Russia at the "Favourites of the Moon" festival. During that same month, Electra launched her perfume, "Carmen Electra", with FragranceNet. Electra can most recently be seen as the host of WEtv's new reality docuseries "Ex Isle" which premiered January 8th, 2016. She has over 4.8 million Facebook followers, 1.9 million Instagram followers, and 562 thousand X (formerly known as Twitter) followers.[1]

31.     That we know of, Electra is depicted in the photo in **Exhibit "B"** to promote Gold Club on its X (formerly known as Twitter) page. This Image was intentionally altered to make it appear that Electra was either a stripper working at Gold Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

32.     Electra has never been employed at Gold Club, has never been hired to endorse Gold Club, has never been otherwise associated or affiliated with Gold Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

33.     Swedberg is an American actress and model. Swedberg has appeared in a number of TV series including, Badass, Playboy's Beach House, Pauly Shore's Paulytic's, Snake and Mongoose and a new series about to air called Muck in which she has a starring recurring role. Swedberg was *Playboy's* Playmate of the month April 2011 and went on to win Playmate of the

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

Year in 2012 and 2013.

34.     That we know of, Swedberg is depicted in the photo in **Exhibit "C"** to promote Gold Club on its X (formerly known as Twitter) page. This Image was intentionally altered to make it appear that Swedberg was either a stripper working at Gold Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

35.     Swedberg has never been employed at Gold Club, has never been hired to endorse Gold Club, has never been otherwise associated or affiliated with Gold Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

36.     Hinton was first introduced to the modeling industry at age fourteen when she was discovered by a talent manager at a wedding. She immediately booked three national TV commercials and guest appeared on *Baywatch* and *7th Heaven* by the age of sixteen. At the age of eighteen, she began working runway shows and doing print campaigns. In 2010, Hinton became the face of the *Palms Hotel & Casino's 2010* ad campaign. She then expanded to TV personality roles having hosted for *Victory Poker*, and as an interview personality for the *Top Rank Boxing* interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as *July's Playmate of the Month* becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for *Milwaukee's Best Beer* in conjunction with *Playboy Enterprises*. Hinton also gained spokes model roles for *Affliction Clothing*, *Enzo*, *Milano Hair Products*, *REVIV Wellness Spa*, *Protein World* and ongoing modeling contracts with *Rhonda Shear Shapewear*, *Leg Avenue* and *Roma Costume*, in addition to hosting a Los Angeles, CA television station *KTLA*. Her images appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for

magazines such as *FHM*, *Kandy*, *MMA Sports*, *Guitar World*, and *Muscle & Fitness*. She was recently named Creative Director for *MAJR Media* and was given part ownership for her role with the company. Hinton has also earned an elite status as a social media celebrity crossing over the 1 million follower benchmark on Instagram, 2.6 million followers on Facebook, and 239 thousand followers on X.

37.    That we know of, Hinton is depicted in the photo in **Exhibit "D"** to promote Gold Club on its X (formerly known as Twitter) page. This Image was intentionally altered to make it appear that Hinton was either a stripper working at Gold Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

38.    Hinton has never been employed at Gold Club, has never been hired to endorse Gold Club, has never been otherwise associated or affiliated with Gold Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

39.    Pinder is, and at all times relevant to this action was, one of Great Britain's most famous glamour models, an actress, host, and businesswoman. She has been featured in publications such as *FHM, Nuts, Loaded, The Daily Star,* and hundreds of others. Pinder appeared on *FHM's* list of the "100 Sexiest Women in the World" in 2005, 2006, and 2007. She was a guest columnist in *Nuts*, entitled "The Truth About Women" and appeared on the final edition of the *Nuts* magazine cover. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) among others. Pinder has an established acting career with many TV appearances and Film credits. She has appeared on shows such as *I'm Famous and Frightened*, *Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, Team and Bo!* in the USA; and was also a contestant on *Celebrity Big Brother*. Pinder starred in films such as

*The Seventeenth Kind, Age of Kill,* and *Warrior Savitri.* Pinder works closely with several wildlife charities and is involved in fundraising for *Tiger Time*, *The David Shepherd Wildlife Foundation*, and *International Animal Rescue.* Pinder has also worked with *Help for Heroes* appearing in the *Hots Shots* fund raising calendar and also visited troops in Afghanistan in 2007. She has supported the Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. Pinder's annual calendar continues to be one of the bestselling model calendars year after year and reinforces Pinder's status as an elite class of Social Media Influencers with 1.3 million followers on Facebook, 217 thousand followers on Instagram, and 497 thousand followers on X.

40.     That we know of, Pinder is depicted in the photos in **Exhibit "E"** to promote Gold Club on its X (formerly known as Twitter) page. This Image was intentionally altered to make it appear that Pinder was either a stripper working at Gold Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

41.     Pinder has never been employed at Gold Club, has never been hired to endorse Gold Club, has never been otherwise associated or affiliated with Gold Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

42.     M.Davalos established a modeling career in Colombia as one of the most famous and successful models in all of Latin America by the age of 18. M.Davalos was the face of Nacar cosmetics and has appeared in *Maxim* magazine, *Imagen* magazine, *Besame*, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, *Revista Soho*, *SCRIBE, Coed People,* La Gemela mas Dulce, Para Hombre, Spiritual Jeans and Satori. M.Davalos is constantly listed in "The top sexiest people in the world" lists and whether solo or teamed up with her twin sister is constantly in demand. M.Davalos' worldwide identity has continued to grow, and her

earning capabilities have increased dramatically with over 454 thousand Instagram followers.

43.     That we know of, M.Davalos is depicted in the photos in **Exhibit "F"** to promote Gold Club on its X (formerly known as Twitter) page. These Images were intentionally altered to make it appear that M.Davalos was either a stripper working at Gold Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

44.     M.Davalos has never been employed at Gold Club, has never been hired to endorse Gold Club, has never been otherwise associated or affiliated with Gold Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

45.     Wicks is an English model and actress. Wicks joined the Samantha Bond Management and started modeling in 2008 at the age of 17. At age 18, she became a *Page 3* girl for *The Sun* newspaper and began modeling for such magazines as *FHM* and *Front*. Wicks was invited to the PES Rankings UK Main Event to sign some posters and to give away the prize for the event, where she was a crowd favorite. She appeared in music videos for "You Can Dance" with Bryan Ferry and Professor Green's video "Be Good To Green". Wicks gained huge publicity and helped the cause when she raised money for Help for Heroes by ascending Mount Toubkal in Morocco. During the 2013 Christmas holiday season, she appeared in a number of music video clips of the German comedy band, Keule. Wicks' social media profile is growing rapidly along with a professional personal website that was built by her fans.

46.     That we know of, Wicks is depicted in the photos in **Exhibit "G"** to promote Gold Club on its X (formerly known as Twitter) page. These Images were intentionally altered to make it appear that Wicks was either a stripper working at Gold Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

47.     Wicks has never been employed at Gold Club, has never been hired to endorse Gold Club, has never been otherwise associated or affiliated with Gold Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

48.     Valencia is, and at all times relevant to this action was, a successful professional model with numerous accomplishments. She is regarded as one of the top models in her home country of Colombia. Valencia has modeled in Ecuador, Peru, The Dominican Republic, Mexico and Venezuela. She has worked with clients such as Diesel, Americanino, Leonisa, Chevignon, and Onde de Mar, and is the contract face of Besame Lingerie. She currently has over 151 thousand Instagram followers and over 72 thousand X followers.

49.     That we know of, Valencia is depicted in the photo in **Exhibit "H"** to promote Gold Club on its X (formerly known as Twitter) page. This Image was intentionally altered to make it appear that Valencia was either a stripper working at Gold Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

50.     Valencia has never been employed at Gold Club, has never been hired to endorse Gold Club, has never been otherwise associated or affiliated with Gold Club, has received no remuneration for  Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

51.     Peers is an English glamour model. She began modelling in December 2009 for *The Sun's Page 3*. She continues to model for *Page 3*, and she also regularly appears in magazines such as *Nuts* and *Loaded*. She was also on the front cover of the 2011 and 2012 *Page 3* calendars and the 2012 Hot Shots Calendar. Peers was the highest new entry in "Nuts 100 Sexiest Babes 2010" at No. 6. She has 330 thousand Instagram followers, and 478 thousand X followers.

52.     That we know of, Peers is depicted in the photo in **Exhibit "I"** to promote Gold Club on its X (formerly known as Twitter) page. This Image was intentionally altered to make it appear that Peers was either a stripper working at Gold Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

53.     Peers has never been employed at Gold Club, has never been hired to endorse Gold Club, has never been otherwise associated or affiliated with Gold Club, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

*Defendants' Business*

54.     Upon information and belief, Defendants operated, during the relevant time period, Gold Club, where they engaged in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

55.     Upon information and belief, and in furtherance of its promotion their promotion of Gold Club, Defendants own, operate and control Gold Club's social media accounts, including its Facebook, X, and Instagram accounts.

56.     Defendants used Gold Club's Facebook, X, and Instagram accounts to promote Gold Club, and to attract patrons thereto.

57.     Defendants did this for their own commercial and financial benefit.

58.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as a stripper at Gold Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

59.     Defendants used Plaintiffs' Images and created the false impression that they

worked at or endorsed Gold Club to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

60.     As Defendants were at all times aware, at no point have any of the above named Plaintiffs ever been affiliated with or employed by Gold Club, and at no point have any of the Plaintiffs ever endorsed Gold Club, or otherwise been affiliated or associated with Gold Club.

61.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

62.     As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

***Standard Business Practices in the Modeling Industry***

63.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

64.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

*Defendants' Misappropriation of Plaintiffs' Images*

65.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Gold Club by and through various marketing and promotional mediums including, without limitation, Gold Club's website, X, Facebook, and Instagram.

66.     Defendants showcased Plaintiffs' Images on Gold Club's social media pages to create the false impression that Plaintiffs worked at Gold Club, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

67.     Defendants did so to attract clientele to Gold Club, promote Gold Club, and thereby generate revenue for Defendants.

68.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Gold Club.

69.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

70.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

71.     At no point were any of the Plaintiffs ever affiliated with Gold Club, or Defendants.

72.     Each of Plaintiffs' Images was used without her consent.

73.     At no point was any Plaintiff ever contacted by Defendants, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

74.     Defendants never obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

- 15 -

75.     Defendants never paid any Plaintiff for its use of her Images on any promotional materials, including Gold Club website, X, Facebook, or Instagram accounts.

76.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

77.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)**

78.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

79.     The provisions of the Lanham Act, 15 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

80.     As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Gold Club or agreed to appear in Gold Club's advertisements.

81.     Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

82.     Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Gold Club.

83.     Insofar as Defendants published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

84.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to

mislead potential customers as to Plaintiffs' employment at and/or affiliation with the Club.

85.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

86.     Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

87.     Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)

88.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

89.     The provisions of the Lanham Act, 15 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

90.     Defendant used Plaintiffs Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Gold Club, or worked at, sponsored, or approved of Gold Club's goods, services or commercial activities.

91.     This was done to promote and attract clientele to Gold Club, and thereby generate revenue for the Defendants.

92.     Thus, this was done in furtherance of Defendants' commercial benefit.

93.     Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Gold Club, nor worked at, sponsored, or approved of  Gold Club's goods, services or commercial activities, Defendants nevertheless used Plaintiffs

Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Gold Club.

94.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

95.     Upon information and belief, Defendant's use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

96.     Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### THIRD CAUSE OF ACTION
**(Right of Privacy)**

97.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

98.     As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Maryland law.

99.     Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

100.    Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Gold Club's website or related social media accounts as part of Defendants' advertising campaign.

101.    At all relevant times, Gold Club's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

102.   Gold Club's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

103.   Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

104.   Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized each Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

105.   Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

106.   Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for Gold Club.

107.   At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

108.   Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

109.   At no point did Defendants ever compensate Plaintiffs for its use of their Images.

110.   No applicable privilege or authorization exists for Defendants' use of Plaintiffs'

Images.

## FOURTH CAUSE OF ACTION
### (Right of Publicity)

111.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

112.    As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

113.    Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

114.    As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Gold Club's advertising.

115.    Defendants did so without any Plaintiff's consent, written or otherwise.

116.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

117.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

118.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

119.    At no point did Defendants ever compensate Plaintiffs for their use of their Images.

120.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs'

Images.

## FIFTH CAUSE OF ACTION

**(Maryland's Consumer Protection Act, West's Ann. Md. Code, Commercial Law § 13-301)**

121.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

122.    Defendants operated Gold Club's website and social media accounts in order to promote Gold Club, to attract clientele thereto, and to thereby generate revenue for Defendants.

123.    As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Maryland.

124.    Defendants published Plaintiffs' Images on  Gold Club's website and social media accounts in order to create the false impression that Plaintiffs were either strippers working at the Club, endorsed the Club, or were otherwise affiliated, associated, or connected with the Club.

125.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Club.

126.    Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Maryland law.

127.    Defendants' advertising practices offends the public policy of Maryland insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendants' commercial benefit.

128.    Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are strippers at Gold Club.

129.     Defendants' advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are strippers at, endorse, or are otherwise affiliated with, Gold Club.

130.     There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants' own commercial interests.

131.     As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on their Club's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

132.     As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Defamation)

133.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

134.     As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

135.     Defendants' publication of said Images constitutes a representation that Plaintiffs were either employed by the Club, that they endorsed the Club, or that they had some affiliation with the Club.

136.     None of these representations were true.

137.     In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at the Club or endorsed the Club.

138.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

139.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

140.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

141.    Defendants' publication of Plaintiffs' Images constitutes defamation under Maryland law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

142.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Maryland law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

143.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication

of the Images support.

144.     Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Maryland law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

145.     Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SEVENTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

146.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

147.     Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

148.     Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

149.     Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

150.     Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

151.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

152.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Maryland law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

153.    Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

154.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion)

155.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

156.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

157.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

158.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

159.    Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

160.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

161.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at the Club, or endorsed the Club.

162.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

163.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

164.    Defendants has been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to its Clubs.

165.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

166.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

167.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

168.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

169.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

170.    Although Defendants have availed itself of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendant has not compensated Plaintiffs.

171.    Plaintiffs are therefore entitled to reasonable compensation for the Club's unauthorized use of their Images.

### **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c) For punitive and/or treble damages under the Lanham Act, 15 U.S.C.§ 1117;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and Maryland's Consumer Protection Act; and,

(e) For such other and further relief as the Court may deem just and proper.

Dated: June 13, 2024
New York, New York

The Plaintiffs, by their attorney


*/s/ John V. Golaszewski*
John V. Golaszewski (#22350)
THE CASAS LAW FIRM, PC
1740 Broadway, 15th Floor
New York, New York 10019
T: 646-872-3178
F: 855.220.9626
john@talentrights.law