**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **CAMILA DAVALOS,** *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>**GGC-BALTIMORE, LLC,** *et al.*,<br><br>*Defendants*. | Case No. 1:24-CV-01733-JRR |

**MEMORANDUM OPINION**

Pending before the court is Defendants GGC-Baltimore, LLC ("GGC"), and Diane Kozel's Motion to Dismiss (ECF No. 6; the "Motion").[1] The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the motion will be DENIED.

**I.   BACKGROUND**[2]

Plaintiffs Camila Davalos, Tara Leigh Patrick, Jaclyn Swedberg, Jessica Hinton, Lucy Pinder, Mariana Davalos, Rosie Wicks, Sandra Valencia, and Holly Peers are professional models who earn income from modeling for, and licensing their images to, companies, magazines, and individuals for advertising purposes. (ECF No. 1, the "Complaint" ¶ 21.) Defendant GGC operates The Gentleman's Gold Club (the "Gold Club") in Baltimore; Defendant Diane Kozel is the Chief Operating Officer and a principal of GGC, and, in this capacity, controls operation of the Gold Club. *Id.* ¶¶ 18, 20. The Gold Club is a night club and bar where "nude and/or semi-nude women entertain the business' clientele." *Id.* ¶ 54.

---

[1] By order of January 15, 2025, the Complaint (ECF No. 1) was dismissed as against Defendant Jean Malkiewicz. (ECF No. 17.)

[2] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 1.) *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

In 2015 and 2016, without Plaintiffs' permission, Defendants posted Plaintiffs' images for promotional and marketing purposes on the Gold Club website, as well as various social media platforms, including X (formerly Twitter), Facebook, and Instagram. Specifically, Defendants posted Plaintiffs' images to make it appear as though Plaintiffs worked at or were associated with Gold Club. (Complaint, ECF No. 1 ¶¶ 28, 31, 34, 37, 40, 43, 46, 49, 52, 65.) Plaintiffs have never worked for, or been associated with, the Gold Club. *Id*. ¶ 24. In addition to using Plaintiffs' images without their consent, Defendants did not pay Plaintiffs for the use of their images. *Id*. ¶¶ 25, 60, 61.

Plaintiffs' agents negotiate their modeling salaries based on, among other factors, "the reputation, earning capacity, experience and demand" of the model. (Complaint, ECF No. 1 ¶ 64.) Plaintiffs are "selective concerning the companies, and brands, for which they model" because their reputations are "critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands." *Id.* ¶ 22. The Gold Club's posts portrayed Plaintiffs as strippers and gave the misimpression that they worked at, or endorsed, the Gold Club. This false portrayal caused harm to Plaintiffs' reputations and brands, and benefitted Defendants' financial and reputational standing and profile in the industry. *Id*. ¶¶ 25, 58, 141.

Plaintiffs sued Defendants setting forth the following claims: Lanham Act False Advertising (15 U.S.C. § 1125(a)(1)(B)) (Count I), Lanham Act False Association (15 U.S.C. § 1125(a)(1)(A)) (Count II); Right to Privacy (Count III); Right of Publicity (Count IV); Maryland Consumer Protection Act (MD. CODE ANN., COM. LAW § 13-301) (Count V); Defamation (Count VI); Negligence and *Respondeat Superior* (Count VII); Conversion (Count VIII); Unjust Enrichment (Count IX); and Quantum Meruit (Count X). Plaintiffs subsequently withdrew their

Negligence (Count VII), Conversion (Count VIII), and Quantum Meruit (Count X) claims. (ECF No. 9 at p. 3 n.2.) Defendants seek dismissal of all remaining counts. (ECF No. 6.)

## II.   STANDARD OF REVIEW

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations,*

*LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

### III. ANALYSIS

#### A. Violations of the Lanham Act – Counts I and II

In their first two causes of action, Plaintiffs allege that Defendants violated the Lanham Act's prohibition on false advertising, 15 U.S.C. § 1125(a)(1)(B), and false association, 15 U.S.C. § 1125(a)(1)(A). Defendants move to dismiss these counts because Plaintiffs "have wholly failed to allege facts sufficient to establish they are within the class of claimants entitled to maintain a statutory cause of action" under the Lanham Act. (ECF No. 6-1 at p. 14.)

To fall "within the class of plaintiffs whom Congress has authorized to sue under § 1125(a)," Plaintiffs' claims must: (1) fall within the Lanham Act's zone of interests; and (2) allege that their damages were proximately caused by Defendants' violations of the Lanham Act. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 707 (4th Cir. 2016) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)).

Demonstration that a claim falls within the Lanham Act's "zone of interests" is "not 'especially demanding,' and the plaintiff receives the 'benefit of any doubt.'" *Belmora*, 819 F.3d at 707 (quoting *Lexmark*, 572 U.S. at 130). Identifying the Lanham Act's zone of interests "requires no guesswork" because the Act contains an "unusual[] and extraordinarily helpful" purpose statement. *Lexmark*, 572 U.S. at 131. The purpose statement provides in pertinent part:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated

4

>by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127.

"[M]ost of the enumerated purposes are relevant" to false association cases. *Lexmark*, 572 U.S. at 131. In contrast, "a typical false-advertising case will implicate only the Act's goal of 'protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition.'" *Id*. (quoting 15 U.S.C. § 1127) (alterations original). Thus, "to come within the zone of interests in a suit for false advertising under [the Lanham Act], a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id*.

In *Geiger v. Abarca Fam. Inc.*, the plaintiffs, professional models, made allegations nearly identical to those in the instant case against another nightclub.[3] No. 3:21CV771 (DJN-EWH), 2022 WL 4242838 (E.D. Va. July 29, 2022), *report and recommendation adopted*, No. 3:21CV771(RCY), 2022 WL 4241649 (E.D. Va. Sept. 14, 2022). There, the court found the plaintiffs fell within the zone of interest because "the reasonable inference from [their] allegations," accepted as true on a motion to dismiss, was "that Defendant's unauthorized use of Plaintiffs' images injured Plaintiffs' commercial interest in their reputations because Defendants' use made it appear that Plaintiffs worked for, or endorsed, a nightclub featuring nude or semi-nude women." *Id*. at *8. Here, as alleged, "Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential." (Complaint, ECF No. 1 ¶ 22.) "Plaintiffs are necessarily selective concerning

---

[3] Defendants urge that the instant action is one in a series of meritless Lanham Act claims brought by models and entertainers against nightclubs for unauthorized use of their images. Of the numerous cases Defendants cite in support of their assertion that the "false advertising claim should be dismissed at this procedural posture," only two are cases resolving motions to dismiss; importantly, both courts allowed the plaintiffs' claims to proceed. The balance of cases Defendants rely on are opinions issued on motions for summary judgment. Rule 56 imposes a standard inapplicable at this stage.

the companies, and brands, for which they model." *Id*. Therefore, Plaintiffs allege, the Gold Club's social media posts that make it appear as though Plaintiffs work at, or are associated with, the Gold Club "substantially injure[] their careers" and deprive them of income Defendants owe them for commercialization of their images for Defendants' benefit and gain. *Id.* ¶¶ 69, 70. These allegations, taken as true, plausibly place Plaintiffs' claims within the zone of interest.

As to their false association claim, Plaintiffs allege that Defendants' use of their images "create[d] the false impression with potential clientele that each Plaintiff either worked as a stripper at Gold Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club." (Complaint, ECF No. 1 ¶ 58.) The Gold Club thus deprived Plaintiffs of income related to commercialization of their images. *Id*. ¶ 69. In *Geiger*, the court found that near identical claims, "if substantiated, would advance the enumerated purpose [] of 'protect[ing] persons engaged in … commerce against unfair competition.'" 2022 WL 4242838, at *8. This court is similarly persuaded that Plaintiffs' false association claim plausibly falls within the zone of interest. Importantly, Plaintiffs do not need to show direct competition with Defendants to fall within the Lanham Act's zone of interest. *Lexmark,* 572 U.S. at 136; *Geiger*, 2022 WL 4242838, at *8.

Defendants next argue that Plaintiffs cannot bring their Lanham Act claims because they have not adequately alleged proximate cause. (ECF No. 6-1 at pp. 16, 18.) The Lanham Act's "statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute." *Belmora*, 819 F.3d at 707-708 (quoting *Lexmark*, 572 U.S. at 132). Thus, the alleged injuries must have a "sufficiently close connection to the conduct the statute prohibits." *Id*. For false advertising claims, this entails "show[ing] economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs

when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133.

Plaintiffs allege their reputations are material to their image licensing fee/s and that the Gold Club's social media and web site posts falsely suggest they work as strippers, subjecting them to shame, ostracism, and degradation, and substantially injuring their careers. (Complaint, ECF No. 1 ¶¶ 64, 70, 141.) Plaintiffs allege that Defendants misuse of their images caused reputational harm and, therefore, directly negatively impacts their business opportunities and fees they can successfully charge. *See Ullah v. Linkenauger*, No. 1:20-CV-00634 (AJT/JFA), 2020 WL 9459338 (E.D. Va. Oct. 2, 2020) (finding proximate cause where "[p]laintiff has alleged facts from which to draw a reasonable inference that he has sufficiently commercialized his name and image to establish a market presence and that his opportunities to independently market his image and name has been adversely affected by the false association created by Defendants' conduct."). Accordingly, Plaintiffs allege facts sufficient to state Lanham Act claims delineated below.

    **i. Count I - False Advertising**

To state a claim for false advertising under the Lanham Act, plaintiffs must state facts necessary to establish the following elements:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015) (quoting *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011)).

Defendants argue that "Plaintiffs have failed to plausibly plead that anyone was actually confused by the 13 posts in question" and that "Plaintiffs entirely fail to allege any bad faith on behalf of Defendants." (ECF No. 14 at p. 4.)  The court disagrees.  Plaintiffs allege the posts had the tendency to deceive because "each advertisement at issue in this action were [sic] false and misleading because no Plaintiff ever worked at Gold Club or agreed to appear in Gold Club's advertisements" and "Defendants used Plaintiff's images to create the false impression that they worked at or endorsed Gold Club."  (Complaint, ECF No. 1 ¶¶ 59, 80.)  Plaintiffs also allege that "given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers." *Id.* ¶ 81.  At this stage, assuming the truth of the allegations, the Gold Club's posts deceived, and/or had the potential to deceive, consumers.

Although bad faith is not an essential element of a false advertising claim, *Design Res., supra,* Plaintiffs allege facts sufficient to sustain a finding that Defendants acted in bad faith. *See, e.g.,* Complaint, ECF No. 1 ¶ 23 ("Each of the Plaintiffs' images was misappropriated, and intentionally altered, by one of more of the Defendants"); ¶ 58 ("Defendants have used, advertised, created, printed and distributed the images of Plaintiffs . . . in order to create the false impression); and ¶ 60 ("Defendants were at all times aware, at no point have any of the above named Plaintiffs ever been affiliated with or employed by Gold Club").  Consequently, Plaintiffs adequately plead a claim for Lanham Act false advertising.

### ii.  Count II - False Association

Defendants also argue that Plaintiffs failed to state a claim for False Association as the Gold Club's "postings make no statement, nor do they insinuate that the individual depicted will appear, is employed by, will endorse the club or will appear at an event at the club" and "no

individual is named in any photograph and there are no statements concerning the unnamed individuals." (ECF No. 6-1 at p. 23.)

To assert a false association claim under the Lanham Act, a plaintiff must allege facts sufficient to establish: (1) the defendant used the plaintiff's word, term, name, symbol, device or any combination thereof in interstate commerce in connection with goods and services; (2) the defendant's use of the plaintiff's word, term, name, symbol, device or any combination thereof was likely to cause confusion, mistake or deception as to the association of the defendant with the plaintiff, or the sponsorship, or approval of defendant's goods or services; and (3) the plaintiff is, or is likely to be, damaged by these acts. *Ullah*, 2020 WL 9459338, at *3.

By its terms, the Lanham Act does not limit false association claims to use of a written word or statement. 15 U.S.C. § 1125(a)(1); *Geiger v. C&G of Groton, Inc.*, 424 F.Supp.3d 276, 293 (D. Conn. 2019) (finding advertisements that included an image may create an "allegedly inappropriate association" which "could be impliedly false."). Plaintiffs explicitly and repeatedly allege that the Gold Club's posts made it appear (falsely) that Plaintiffs worked at, endorsed, or were otherwise associated with, the Gold Club. (Complaint, ECF No. 1 ¶¶ 28, 31, 34, 37, 40, 43, 46, 49, 52.) The court takes Plaintiffs' allegations as fact. Therefore, Plaintiffs adequately state a claim for Lanham Act false association.

### B. Counts III–X - Violations of Maryland Common Law

Defendants submit that the remaining counts are time-barred. (ECF No. 6-1 at p. 24–26.) Under Maryland law, "a civil action shall be filed within three years from the date it accrues." MD. CODE ANN., CTS. & JUD. PROC. § 5-101. In all actions, "the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 290 Md. 631, 636 (1981). The discovery rule for accrual set forth in *Poffenberger*,

> contemplates actual knowledge that is express cognition, or awareness implied from 'knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.'

*Id.* at 637 (quoting *Fertitta v. Bay Shore Dev. Corp.*, 252 Md. 393, 402 (1969)) (alterations original).

Defendants assert that Plaintiffs' claims accrued in 2015 or 2016 upon publication of the photos. (ECF No. 6-1 at p. 25.) The Complaint does not state when Plaintiffs actually discovered the photos; on this basis, Plaintiffs argue that under the discovery rule, their claims are not time-barred on their face. (ECF No. 9 at p. 7.) Defendants aver Plaintiffs knew or should have known of the photos at publication due to their "sophistica[tion] in publicity on social media" evidenced by their thousands of social media followers. (ECF No. 6-1 at p. 25.) Defendants fail to argue or explain why internet popularity "puts an ordinary person on inquiry" to search for unauthorized use of their images. *Poffenberger*, *supra*. Additionally, it is unclear what facts such an investigation would in all probability have disclosed, as only one of the 10 exhibits reference Plaintiffs' names or social media usernames. *See* ECF Nos. 1-1–1-10. "Simply search[ing] the internet for [Plaintiffs'] images," which Plaintiffs alleged Defendants altered, may not have produced the relevant posts. (ECF Nos. 14 at p. 11; Complaint, ECF No. 1 ¶ 23.) Drawing all reasonable factual inferences in favor of Plaintiffs, and evaluating all allegations on the face of the Complaint, the court does not conclude the claims are time-barred.[4]

---

[4] "A court may dismiss a complaint on statute of limitations grounds 'if the time bar is apparent on the face of the complaint.'" *Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018) (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)).

Defendants do not raise any other objections to Plaintiffs' claims under Maryland common law rights to Privacy (Count III) or Publicity (Count IV), or the Maryland Consumer Protection Act (Count V).  Therefore, this claims will go forward.

### C. Count VI - Defamation

On alternative grounds, Defendants seek dismissal of Plaintiffs' defamation claim because the Gold Club's posts "contain no statement about any individual Plaintiff" and thus cannot be defamatory *per se* and Plaintiffs have not sufficiently pled defamation *per quod*.  (ECF No. 6-1 at p. 26–27.)  In response, Plaintiffs argue they sufficiently plead *per se* and *per quod* defamation.  (ECF No. 9 at p. 8.)

In a case involving a plaintiff who is not a public figure, to state a prima facie case of defamation, a plaintiff must plead facts sufficient to establish that:

> (1) the defendant made a defamatory communication—*i.e.,* that he communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement as being defamatory; (2) the statement was false; (3) the defendant was at fault in communicating the statement; and (4) the plaintiff suffered harm.

*Peroutka v. Streng*, 116 Md. App. 301, 311 (1997).  Additionally, under Maryland law, courts differentiate between defamation *per se* and defamation *per quod*.  *Daniel v. Home Box Off., Inc.*, No. CV ELH-23-233, 2023 WL 8478867, at *9 (D. Md. Dec. 7, 2023).

> A statement that is defamatory *per se* is one for which the "words themselves impute the defamatory character," such that the plaintiff need not plead additional facts demonstrating their defamatory nature. A statement that is defamatory *per quod* is one for which extrinsic facts are necessary to demonstrate "the defamatory character of the words sued upon."

*Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 366 (D. Md. 2017) (quoting *Metromedia, Inc. v. Hillman*, 285 Md. 161, 400 A.2d 1117, 1123 (1979)).

Here, Plaintiffs plausibly allege facts to animate the essential elements of defamation. Plaintiffs allege that Defendants' posts communicated (falsely) that Plaintiffs worked for the Gold Club as strippers or were otherwise associated with the club; Defendants knew this to be false at the relevant time; and Plaintiffs suffered harm to their reputations and their business due to Gold Club's false representations. (Complaint, ECF No. 1 ¶¶ 134–36, 138, 139, 141, 142.) Defendants assert without authority that dismissal is warranted because Defendants' posts of Plaintiffs' images were not accompanied by verbal statements "about any individual Plaintiff." (ECF No. 6-1 at p. 27). This argument is unavailing. Pictorial depictions or use of a plaintiff's image is capable of defamatory meaning. *Regan v. Sullivan,* 557 F.2d 300, 308–309 (2d Cir. 1977); *Kennedy v. Ministries, Inc.,* 10 Media L. Rep. (BNA) 2459 (E.D. Pa. 1984) (providing that use of plaintiff's photograph on book cover and in advertisements which could create impression that plaintiff had been branded with the "Mark of the Beast" and is associated with the "Antichrist" is capable of defamatory meaning); *Peay v. Curtis Pub. Co.,* 78 F. Supp. 305, 306 (D. D.C. 1948).

"The threshold question of whether a publication is defamatory in and of itself, or whether, in light of the extrinsic facts, it is reasonably capable of a defamatory interpretation is for the court upon reviewing the statement as a whole." *Batson v. Shiflett*, 325 Md. 684, 723 (1992); *accord Daniel*, 2023 WL 8478867, at *10. Here, the court finds that Plaintiffs have plausibly alleged defamation *per se*. *See* ECF No. 9 at p. 8 (quoting *Edmondson v. RCI Hospitality Holdings, Inc.*, 16-cv-2242 (S.D.N.Y) (finding "it does not take special knowledge or reference to extrinsic facts and innuendo to understand that there's a distinction between being a stripper in a strip club and being a professional model, even a Playboy model")). Additionally, Plaintiffs allege that the posts injured each Plaintiff in her "trade, business, and profession as a professional model." (Complaint, ECF No. 1 ¶ 142.) "False statements denigrating a person's professional competence, or that

12

otherwise negatively affect that person's employability or community reputation, are classic examples of defamation per se." *Behram v. Adventist Health Care, Inc.*, No. 375, Sept. Term, 2022, 2023 WL 4011686, at *21 (Md. Ct. Spec. App. June 15, 2023), *cert. granted sub nom. Adventist Healthcare, Inc. v. Behram,* 486 Md. 95, 302 A.3d 542 (2023), and *aff'd sub nom. Adventist Healthcare, Inc. v. Behram,* 488 Md. 410, 322 A.3d 1 (2024).

Even if not *per se* defamatory, Plaintiffs allege that the "publication falsely accuses Plaintiff[s] of having acted in a manner – *i.e.*, working as a stripper and or endorsing a strip club – which would subject each Plaintiff to hatred, shame, … contempt" and that Plaintiffs' reputations were injured by the postings. (Complaint, ECF No. 1 ¶¶ 131, 141.) Taking such allegations to be true, a reasonable jury could find the posts were defamatory *per quod*.[5] *Scott v. Yount*, No. 2089, Sept. term, 2015, 2019 WL 1786017 (Md. Ct. Spec. App. Apr. 23, 2019) (describing the test for *per quod* defamation as "whether [the plaintiff] adduced sufficient evidence that a reasonable jury could find the statement was defamatory."). Accordingly, Plaintiffs adequately state a claim for defamation.

### D. Count IX – Unjust Enrichment

Defendants seek to dismiss Plaintiffs' unjust enrichment claim for "fail[ure] to plead any facts concerning any restitution or damages that Plaintiffs have incurred as a result of the social media publication of the images." (ECF No. 6-1 at p. 31.) Defendants identify the three elements of an unjust enrichment claim as: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention

---

[5] Defendants also argue that Plaintiffs fail to allege defamation *per quod* because they do not allege special damages. (ECF No. 14 p. 8.) The cases Defendants cite for this proposition discuss special damages but not in the context of defamation *per quod* claims; the cited authority is therefore unpersuasive. *See Herring v. Citizens Bank & T. Co.*, 21 Md. App. 517, 548 (1974) (discussing special injury as an element of the "malicious use of process" tort); *One Thousand Fleet Ltd. Partnership v. Guerriero*, 346 Md. 29, 37 (1997) (same); *Campell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 532 (2004) (same).

by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value. *Id.* at p. 30 (citing *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151–52 (2000)).

In their Complaint, Plaintiffs allege that Defendants benefitted from the use of their images, including attracting clientele to the Gold Club, without paying for such use, and that Defendants knowingly misappropriated and altered Plaintiffs' images for this purpose. (Complaint, ECF No. 1 ¶¶ 23, 238, 163–165.)  Specifically, as to damages, Plaintiffs allege that they "have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust," and seek damages in an amount to be determined at trial. *Id*. ¶¶ 165, 166.  Plaintiffs ably state a claim for unjust enrichment.

### IV.   CONCLUSION

For the reasons set forth herein, by separate order, Defendants' Motion to Dismiss (ECF No. 6) shall be denied.

January 22, 2025                                      ___/S/_____
                                                     Julie R. Rubin
                                                     United States District Judge